**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| THOMAS SCHROEDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| MEDTRONIC, INC., | ) |
| | ) |
| Intervenor/Plaintiff | ) |
| | )      Case No. 2:22-cv-02209-DDC-KGG |
| | ) |
| THE UNITED STATES DEPARTMENT | ) |
| OF VETERANS AFFAIRS, a Federal | ) |
| Agency, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF SCHROEDER'S OPENING BRIEF**
**IN SUPPORT OF ADMINISTRATIVE PROCEDURES ACT CLAIM**

TABLE OF CONTENTS

I.     Introduction ........................................................................................................2

II.    Background .........................................................................................................4

     A. Plaintiff Schroeder's Underlying False Claims Act Lawsuit.............................4
     B. The VA's *Touhy* Regulations, 38 C.F.R. § 14.800 *et seq* ...................................7
     C. Plaintiff Schroeder's *Touhy* Requests to and Responses From the VA...............10
     D. Specific Document and Data Subject to this Action...........................................11

III.   Argument ...........................................................................................................14

     A. Standard of Review for an APA Claim.............................................................14
     B. Previous Findings of Arbitrary and Capricious Refusals by the VA...................16
     C. The VA's refusals were arbitrary and capricious because they failed
        to consider relevant factors of 38 C.F.R. § 14.804, failed to consider
        Plaintiff's offers of accommodation, and failed to consider that Plaintiff
        has no other means to obtain the requested documents and data.........................17

        1. Statistically Acceptable Sampling of Redacted Medical Records................17
        2. Numerical Data .........................................................................................24
        3. Documents Regarding the Investigation into Dole VA Cath Lab ................25
        4. VA Audits or Studies Regarding Costs and Clinical Outcomes....................27

Plaintiff Thomas Schroeder hereby submits his Opening Brief in support of his claim brought pursuant to the Administrative Procedures Act, 5 U.S.C. § 551, *et seq*. ("APA") against Defendant the United States Department of Veterans Affairs ("VA") seeking an order from the Court compelling certain records and data in the sole possession of the VA.

## I.    Introduction

Plaintiff Schroeder has brought a False Claims Act ("FCA") suit that includes allegations of egregiously poor treatment of veterans at the Robert J. Dole VA Medical Center ("Dole VA") in Wichita, Kansas. Plaintiff claims that these veterans were subjected to medically unnecessary, grossly excessive, and off-label peripheral vascular procedures causing significant harm. *U.S. ex rel. Schroeder v. Medtronic, Inc., et al.*: D.Kan. case no.: 2:17-cv-02060-DCC-KGG, ("*Schroeder*").  Plaintiff alleges this was all done in the name of profit and greed by the medical device manufacturer, Medtronic, Inc., and the physicians contracted by the VA to perform the procedures, Wichita Radiological Group ("WRG").

As Plaintiff's medical experts testify to in their attached affidavits, sufficient evidence has been provided in Schroeder's FCA case demonstrating a reasonable certainty that these veterans endured medically unnecessary procedures.  These experts further testify that to assist in meeting his burden of proof, Plaintiff needs access to an acceptable sample size of veterans' medical records.  Understanding the highly confidential nature of medical records, Plaintiff has agreed to all personal identifying information being redacted. Plaintiff and his medical experts are also subject to confidentiality under a protective order in place in the *Schroeder* matter. Finally, Plaintiff has also offered to pay the reasonable charges associated with locating and compiling these records.

At the outset, Plaintiff would like to commend the VA for its initial cooperation, participation, and willingness to engage in productive conversations in this *Touhy* process. Such requests can be difficult for the party seeking the documents/testimony. The VA does appear truly concerned about the Plaintiff's underlying FCA allegations. In particular, the troubling medical care our veterans received as reflected in the Dole VA's internal investigation. It is understandable that this same concern would extend to veterans' privacy regarding medical records. From Plaintiff's interaction, the VA does not appear unequivocally opposed to this production. Rather, it requires a court order to overcome the understandable position that such records should not be produced otherwise. While the Plaintiff believes his offered accommodations provide adequate protection, the VA will not produce these medical records and the related data *absent a court order*. These records and data are vital to Plaintiff's FCA claims. Not obtaining these records and data could prove fatal—in particular, that veterans were harmed by medically unnecessary and off label procedures. These records are in the sole possession of the VA and can <u>only</u> be obtained from them.

There is other highly relevant information that the VA will not produce absent a court order. Specifically, Plaintiff requests documents relating to the VA's investigation into conduct at the Dole VA catheterization ("cath") lab involving two of the primary defendants in Plaintiff's underlying FCA suit: Medtronic, Inc. and WRG. The VA has provided some documents regarding this investigation but is withholding others. Plaintiff also requests highly relevant documents reflecting any investigation performed by the VA comparing the costs or clinical outcomes of procedures at the Dole VA's cath lab to other VA facilities performing the same procedures.

For the reasons discussed below, the VA's refusal to produce the requested documents and data is unwarranted and was made in an "arbitrary and capricious manner." The VA's "factors to consider" weigh heavily in Plaintiff's favor. 38 C.F.R. § 14.804. As such, there is no rational basis for the VA's decision, and it made a clear error of judgment. Plaintiff requests that this Court order the documents and data specifically delineated below to be produced.

## II.    Background

**A.    Plaintiff Schroeder's Underlying False Claims Act Lawsuit**.

Plaintiff Schroeder, as "Relator," has brought a *qui tam* action on behalf of the United States government before this same court in the pending *Schroeder* matter. In that action, Relator alleges violations of the False Claim Act, 31 U.S.C. § 3729, *et seq.* against various Defendants. The VA is not a party to that lawsuit. Relator Schroeder alleges that Defendant Medtronic's employees provided illegal remuneration to a Dole VA employee responsible for purchasing medical devices at its cath lab. These bribes came in the form of free meals, gifts, tickets, and electronics. In turn, this person purchased grossly excessive amounts of Medtronic's peripheral arterial disease ("PAD") devices. All other competitors of Medtronic were shut out of this lab due to these bribes. Medtronic's employees groomed and trained physicians from co-Defendant WRG to use their devices when not medically necessary, off-label, and in grossly excessive amounts. WRG also benefited greatly from this scheme. The more devices used in procedures on veterans, the greater their hourly billings to the VA. Relator alleges these actions were all in violation of the False Claims Act/Anti-Kickback Statute. (*See generally*, Doc. 233, ¶¶ 36-158).

Former Dole VA Medical Center Director Rick Ament verified Relator's allegations in his recent deposition. Specifically, Mr. Ament testified that:

- From January 2017 to March 31, 2020, he was the Dole VA Medical Center Director. (Deposition of Rick Ament, at 15:1-10; 17:5-10, attached as **Exhibit A**).

- He became aware that the interventional radiology costs at the Dole VA were an "outlier" on a "substantial" level compared to other VA facilities, stating: "It wasn't a small variance from the norm. It was so significant, we needed to get to the bottom of it." (*Id*. at 29:2-13; 31:16 to 32:8).

- He determined that "there were two issues. There were cost per unit, and there was the number of units consumed …. And our cost per patient was way, way higher than it should have been." (*Id*. at 39:11-24).

- He determined that the medical devices (*e.g.*, balloons, stents and Turbohawk directional atherectomies) were not being handled at the Dole cath lab "under the normal inventory control protocols. In other words, we didn't sign for these, put them in inventory, sign them out from inventory to the department." The devices were "in some instances being stored in one of the manager's office, never hitting the inventory system. This was an epiphany." (*Id*. at 65:5-24).

- He determined that Dole VA cath lab manager Teri Brinkley's "office was the office that inventory was sitting in that was not on our inventory logs." (*Id*. at 68:9 to 69:2). "It was a significant number." (*Id*. at 101:17 to 102:17).

- He considered the gap between the devices that were in inventory compared to what was paid for by the VA to be "alarming. It was alarming." (*Id*. at 72:6-23), Stating further:

    "That even though our usage per patient was excessive, compared to the VA – other facilities in the VA, the – because our supply chain wasn't able to capture it, our costs also didn't match that utilization. So I had, very distinctly, in my heart of hearts, a feeling that we were excessive in our utilization per patient and that inventory was walking. Because even those two didn't match. And that's not coming from my experience as a VA employee. That's coming from my four years as a federal agent." (*Id*. at 73:13-24).

- As a result of his concerns, he hired a "highly respected interventional radiology physician" and "an administrative officer for a radiology department" from the VA to perform a "deep dive on the actual records." (*Id*. at 42:22 to 43:16).

- As a result of this "deep dive," it was determined that:

    "[A] significant number of the patients that were assessed had exorbitant – the number of devices that were used in their care was exorbitant compared to the medical standards that were expected …. I recall a certain number of them were five times the expected amount, and I want to say there were – for some reason, and I could be wrong, there were some that stuck out that were double

digit in terms of the number of devices that were used per patient." (*Id*. at 53:8-21).

"[T]he recollection I have is that, in my nonclinical language, evidence-based practice was not followed, and we were outside of the standard of care in many of the [patient] cases that were reviewed." (*Id*. at 156:3-11).

- His reaction to these investigative results was that:

  "I had mixed emotions. I'm not a clinical person, and I want to say the term 'egregious' was used. I'm a business guy, and I look at processes and I look at cost relationships and I look at efficacy. And the mixed emotions were that we had somebody validating my original assumption. But I was also extremely disappointed that that had occurred. So it was kind of like validation, but I really wish I was wrong." (*Id*. at 56:16 to 57:3).

  When asked if the investigative results made him concerned for patient care, he responded "It did." (*Id*. at 57:4-6).

- He states that as a result of the investigation, "I made a referral myself to the VA Office of Inspector General, Criminal Division, for them to look into the matter." (*Id*. at 49:23 to 50:6).[1]

- He states that as a further result of the investigation, "I shut down the cath lab." (*Id*. at 58:2-13).[2]

In the *Schroeder* action, fact discovery has been ongoing. The current fact discovery deadline is March 30, 2023, with an expert witness discovery deadline of August 23, 2023. (Doc. 234, Revised Scheduling Order, pg.3). The vast majority of the data/documents sought by Plaintiff in this APA matter will be utilized in the expert witness phase in *Schroeder* (*e.g.*, experts reviewing records of procedures and opining on medical and off-label necessity). Relator is seeking relevant fact discovery from parties and non-parties alike, including the VA. To date, some documents and testimony have been obtained from the VA that overwhelmingly

---

[1] It should be noted that there is currently an ongoing VA OIG investigation regarding what happened at the Dole VA's cath lab and there is also an open criminal investigation at the Assistant U.S. Attorney's office in Wichita.
[2] The Dole VA cath lab remains closed as of this filing due to the findings from this investigation.

confirm Relator's overall allegations.  Specifically, discovery has uncovered that atherectomy devices, drug coated balloons (DCB), and stents were used on most veterans at Dole VA in grossly excessive amounts that are neither medically necessary nor appropriate under any circumstances. Based on this limited discovery, Plaintiff's medical expert provided the following opinion:

> "[T]he medical records requested by Mr. Schroeder from the VA will reveal medically unnecessary peripheral vascular procedures –and/or off-label usage of devices that were medically unnecessary– on patients at Dole VA's cath lab."

(Declaration of Dr. Kim Hodgson, M.D., at ¶ 8, attached as **Exhibit B**). Plaintiff's experts have further confirmed that this analysis can be made with all patients' personal identifying information fully redacted and on a representative basis.  (Hodgson Dec., at ¶ 4; Declaration of Caitlin W. Hicks, M.D., M.S., at ¶¶ 4-5 attached as **Exhibit C**).

**B.     The VA's *Touhy* Regulations, 38 C.F.R. § 14.800 *et seq*.**

Under the federal housekeeping statute, 5 U.S.C. § 301, a federal agency may adopt procedures —known as *Touhy* regulations—for responding to requests for testimony or documents. *See*, *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). The VA has promulgated its *Touhy* policies and procedures for the "production or disclosure of official information or records of the Department of Veterans Affairs (VA)."  38 C.F.R. § 14.800 *et seq*. These regulations state that VA personnel are only permitted to provide testimony or produce VA records in legal proceedings if authorized by the "General Counsel, the Regional Counsel, an attorney in the Office of General Counsel designated by the General Counsel, or an attorney in the Regional Counsel office designated by the Regional Counsel."  38 C.F.R. §§ 14.806, 14.807(b).

A party seeking documents or testimony from the VA must comply with the agency's *Touhy* regulations by making a proper request, including "a written statement by the party seeking the testimony or records or by the party's attorney, [along with] a summary of the nature and relevance of the testimony or records sought in the legal proceedings containing sufficient information for the responsible VA official to determine whether VA personnel should be allowed to testify or records should be produced." 38 C.F.R. § 14.805.

The regulations provide fifteen (15) factors that the responsible VA official "should consider" in making the determination whether to produce the requested information. Those factors are:

(a) The need to avoid spending the time and money of the United States for private purposes and to conserve the time of VA personnel for conducting their official duties concerning servicing the Nations' veteran population;

(b) How the testimony or production of records would assist VA in performing its statutory duties;

(c) Whether the disclosure of the records or presentation of testimony is necessary to prevent the perpetration of fraud or other injustice in the matter in question;

(d) Whether the demand or request is unduly burdensome or otherwise inappropriate under the applicable court or administrative rules;

(e) Whether the testimony or production of records, including release in camera, is appropriate or necessary under the rules of procedure governing the case or matter in which the demand or request arose, or under the relevant substantive law concerning privilege;

(f) Whether the testimony or production of records would violate a statute, executive order, regulation or directive. (Where the production of a record or testimony as to the content of a record or about information contained in a record would violate a confidentiality statute's prohibition against disclosure, disclosure will not be made. Examples of such statutes are the Privacy Act, 5 U.S.C. 552a, and sections 5701, 5705 and 7332 of title 38, United States Code);

(g) Whether the testimony or production of records, except when in camera and necessary to assert a claim of privilege, would reveal information properly classified pursuant to applicable statutes or Executive Orders;

(h) Whether the testimony would interfere with ongoing law enforcement proceedings, compromise constitutional rights, compromise national security interests, hamper VA or private health care research activities, reveal sensitive patient or beneficiary information, interfere with patient care, disclose trade secrets or similarly confidential commercial or financial information or otherwise be inappropriate under the circumstances;

(i) Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government favoring one litigant over another;

(j) Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government endorsing or supporting a position advocated by a party to the proceeding;

(k) The need to prevent the public's possible misconstruction of variances between personal opinions of VA personnel and VA or Federal policy;

(l) The need to minimize VA's possible involvement in issues unrelated to its mission;

(m) Whether the demand or request is within the authority of the party making it;

(n) Whether the demand or request is sufficiently specific to be answered;

(o) Other matters or concerns presented for consideration in making the decision.

38 C.F.R. § 14.804.

The regulations provide that after due consideration of the factors above, "the VA official shall determine in writing whether the individual is required to comply with the demand or request and shall notify the requester or the court or other authority of the determination reached where the determination is that VA will not comply fully with the request or demand." 38 C.F.R. § 14.807(c). Importantly, the VA's *Touhy* regulations do <u>not</u> create an independent privilege to withhold information or shield employees from valid discovery requests. *See*, *e.g.*, *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 5994266, at *4 (N.D. Fla. Oct. 9, 2020) ("*Touhy* did not create or endorse an executive privilege for federal agencies to resist entirely discovery efforts by private parties.").

**C.  Plaintiff Schroeder's *Touhy* Requests to and Responses from the VA.**

Beginning in January 2022, pursuant to the VA's *Touhy* regulations, 38 C.F.R. § 14.800 *et seq.*, Plaintiff Schroeder sent written requests for testimony and documents to the VA. (*See*, Administrative Record (hereafter "AR"), US-000499 to 000514; US-000540 to 000555; U.S-000515 to 000519; US-000556 to 000574; US-000537 to 000539; US-000575 to 000577; US-000659 to 000664).  In these requests, Plaintiff properly followed the VA's regulations by providing a detailed summary of the nature and relevance of the testimony and records sought in the underlying legal proceeding such that the responsible VA official could determine whether to comply, and if so, to what extent. 38 C.F.R. §§ 14.804, 14.805. Plaintiff Schroeder requested various documents, data and depositions of current and former VA personnel relevant to his underlying FCA case.  *Id*.

Beginning in June 2022, the VA provided Plaintiff with written responses to his various *Touhy* requests. (AR, US-000491 to 000497; US-000578 to 000579; US-000528 to 000536; US-000665 to 000666). Following these initial requests and responses, counsel for Plaintiff and the VA engaged in several good faith communications. As a result, Plaintiff resubmitted his requests for documents and information, significantly reducing the size and scope of the requested documents, information, and testimony. (AR, US-000520 to 000524).  Following these communications, counsel for the Plaintiff and the VA were able to reach an agreement on many of the requested documents and deposition testimony.

Specifically, the VA agreed to permit the depositions of various current and former employees of the Dole VA and the VA. Indeed, many of these depositions have resulted in verification of Schroeder's underlying FCA/AKS kickback allegations (*e.g.,* confirming illegal remuneration paid by Medtronic to the Dole VA's purchasing agent, supporting Schroeder's

allegations of medically unnecessary treatment). The VA has also produced various documents, including some—but not all—regarding the Dole VA's internal (Director Ament's) investigation regarding the medical treatment of veterans by Defendant WRG in interventional peripheral procedures. (AR, US-000001 to 000360). From those documents, the VA's investigation concluded:

- "***Evidence based medicine not followed in majority of the cases***. Total disregard for TASC II recommendations for PAD's." (<u>Note</u>: TASC II are the internationally recognized standards for diagnosing, testing, and treating peripheral arterial disease) (emphasis added)

- A failure to perform basic diagnostic tests to determine whether interventional procedures were even necessary.

- "Overutilization of DCB [drug coated balloons] and atherectomy devices."

- "The cocktail of devices used in quite a few cases. Is it really warranted even though the end results are not different and add to complications."

- "Seems like over utilization of DCB and atherectomy devices."

(AR, US-000331 to 000333).

**D.      Specific Documents and Data Subject to this Action**.

Despite the agreements reached between Plaintiff and the VA, the VA will not produce some highly relevant documents and data absent an order from this Court. (*See*, *e.g.*, AR, US-000530 to 000532, "VA has authority … pursuant to the *order of a court* of competent jurisdiction, to disclose a Veteran's medical record"). Specifically, for purposes of this action, the documents and data the VA will not produce—and the stated basis for the refusals—are summarized as follows:

1.      Data reflecting the annual number of patients treated with interventional procedures performed at the Dole VA cath lab by interventional radiologists for the years 2011 through 2018. (AR, US-000522). This is strictly numerical data which would not contain any personal

patient identifying information.  This information is necessary in order for Plaintiff's expert to determine a statistically acceptable sample of patient medical records for review.  (Hicks Dec., at ¶¶ 4-5). In its September 20, 2022, letter to Plaintiff, the VA stated it was not willing to produce this statistical data. (AR, US-000534 to 000536).  It also stated that determining and producing these figures would cost an estimated $21,387.52. (*Id.*).

2.      A statistically acceptable sample of patient medical records relating to peripheral arterial disease procedures performed at the Dole VA cath lab for the years 2011 through 2018. As previously stated, this request cannot be made until the data sought above is produced. Plaintiff has agreed to redaction of all personal identifying information from this sampling of medical records to protect patient confidentiality. (AR, US-000522 to 000523, "any information that might include a patient's name or identity can be redacted").  Plaintiff has also agreed to provide payment to the VA for its costs in producing these records. (AR, US-000507, "There should not be any expenditures of money as Relator is prepared to cover any incurred costs for labor, copying, *etc.*, and is willing to cover such costs up front …. Relator is willing to cover any associated IT costs.").  The VA stands by not producing these records on the stated basis that: "it requests documents/medical records that are protected by the Privacy Act, HIPAA, FOIA, and/or related privacy statutes." (AR, US-000534).

3.      Plaintiff seeks documents relating to the VA's (Director Ament's) investigation into conduct at the Dole VA's cath lab involving WRG and Medtronic, Inc. The VA has already provided some documents responsive to this request (AR, US-000001 to 000360).  However, the VA will not produce other relevant documents in its possession responsive to this request. Plaintiff believes the following documents exist and would be covered by this request:

a.      A task force was formed by Dole VA Medical Center Director Ament composed of Dana Foley (now Dana Stelter), Susan Hastings, and Ryan Kittrell. All emails and other

communications among this task force and Ament and others regarding these investigations and audits.

b. All communications involving Dr. Feroz Maqbool. Dr. Maqbool was identified by Mr. Ament as the physician brought in from the Oklahoma VA to review and comment on the peripheral procedures performed at the Dole VA cath lab as part of its internal investigation.

The 38 C.F.R. § 14.804 factors cited as the basis for this refusal are (a): need to avoid spending time and money of the United States for private purposes; (i): avoiding appearance of the VA favoring one litigant over another; and (l): need to minimize VA's involvement in issues unrelated to its mission. (August 15, 2022 correspondence of VA Office of Inspector General, AR, US-000578 to 000579).

4. Plaintiff seeks documents that reflect any audits or studies comparing the costs or clinical outcomes of performing procedures at the Dole VA's cath lab to other VA facilities performing the same procedures. The VA has stated its agreement to provide documents responsive to this request, but only upon payment of its estimated cost basis of $17,443.20. (September 20, 2022 correspondence of VA Office of Chief Counsel, AR, US-000528 to 000536). Plaintiff maintains these costs are not appropriate for what is being requested and what is necessary to produce it. (AR, US-000522, 000528 to 000536).

The VA's correspondences of August 15 and September 20, 2022 (AR, US-000528 to 000536; US-000578 to 000579), refusing to comply with Plaintiff's *Touhy* requests for the records and data delineated above, constitute its "final agency action" for purposes of this APA claim. *See, e.g., Ctr. For Native Ecosystems v. Cables*, 509 F.3d 1310, 1329 (10th Cir. 2007) (citations omitted) ("If an agency has issued a definitive statement of its position, determining the rights and obligations of the parties, the agency's action is final [for purposes of an APA action]"). *See also*, FAC (Doc. 9) and Answer (Doc. 13), at ¶ 26).

### III.    Argument

**A.    Standard of Review for an APA claim.**

"A party challenging an agency's *Touhy*-based denial of a subpoena or request for testimony must proceed under the APA[.]" *Brown v. United States Dep't of Veterans Affs.*, 2017 WL 3620253, at *5 (N.D. Ala. Aug. 23, 2017).  In an action brought pursuant to the APA, a reviewing court may "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Once an agency has taken final action under the APA, a reviewing court analyzes that decision under the "arbitrary and capricious" standard of review. *Id*.

"Under the arbitrary and capricious standard, a reviewing court must determine whether an agency's decision was based on a consideration of the relevant [*Touhy*] factors and whether there has been a clear error of judgment." *Rhoads v. United States Dep't of Veterans Affs.*, 242 F. Supp. 3d 985, 990 (E.D. Cal. 2017).  "At a minimum, the agency must have considered relevant data and articulated an explanation establishing a rational connection between the facts found and the choice made." *Brown*, 2017 WL 3620253, at *5 (citations omitted). "There must be a good reason for an agency to withhold its evidence, and absent such a good reason, doing so is arbitrary, capricious, and an abuse of discretion." *Id*. at *7.

"[T]he Supreme Court explained that an agency violates the APA if it has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Rhoads*, 242 F. Supp. 3d at 990 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  "While a reviewing court

cannot substitute its judgment for that of the agency, it also cannot supply a reasoned basis for the agency's action that the agency itself has not given." *Id*. at 994 (citations omitted). Consequently, the only question for this Court to resolve is a legal one: whether the VA's unwillingness to produce the requested records, documents, and data was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Finally, "[u]nder the APA, the district court's review of an agency's decision is *usually* limited to the administrative record." *Rhoads*, 242 F. Supp. 3d at 990-91 (emphasis added). However, "[i]n extremely limited circumstances, a court may supplement the administrative record or consider extra-record evidence[.][Such circumstances] include when (1) the record is deficient because the agency ignored relevant factors it should have considered, (2) the agency considered factors that were left out of the formal record, and (3) evidence coming into existence after the agency acted demonstrates that the actions were right or wrong." *Rocky Mountain Peace & Just. Ctr. v. United States Fish & Wildlife Serv.*, 40 F.4th 1133, 1160 (10th Cir. 2022) (citations omitted).

Such limited circumstances exist here warranting the Court's consideration of the two attached affidavits and deposition testimony of Dole VA Director Ament. This is because Plaintiff maintains—as discussed below—the VA ignored several relevant factors when considering Plaintiff's requests. Such factors include: the critically important nature of the requested information in relation to the underlying FCA case; the need to prevent the perpetration of fraud and injustice on veterans and the U.S Government; the need for these patients to eventually learn how they were treated and seek potential remedial medical treatment; Plaintiff's offered accommodations; and the fact that the information can *only* be obtained from

the VA—there is no alternative source. The affidavits and testimony provide illumination for the Court's consideration of these factors and the VA's responses.

The opinions provided in the experts' declarations are based in part upon documents within the administrative record, *e.g.*, the VA's investigation. (AR, US-000001 to 000360). The testimony of Dole VA Director Ament is relevant regarding the VA's refusals. This testimony came into existence *after* those actions and the Administrative Record were made. However, Mr. Ament's insights were available to the VA *before* it made its decisions to deny Plaintiff's *Touhy* requests. His testimony is relevant to whether the VA's actions were arbitrary and capricious.

**B.      Previous Findings of Arbitrary and Capricious Refusals by the VA.**

As an initial matter, finding the VA's refusals to be "arbitrary and capricious" here would not be unprecedented.  Rather, several courts have previously determined that the VA's *Touhy* refusals to produce data or testimony were unwarranted. *See*, *e.g.*, *Rhoads v. United States Dep't of Veterans Affs.*, 242 F. Supp. 3d 985 (E.D. Cal. 2017) (finding VA's refusal to be "arbitrary, capricious, and an abuse of discretion"); *Brown v. United States Dep't of Veterans Affs.*, 2017 WL 3620253 (N.D. Ala. Aug. 23, 2017) (same); *Portaleos v. Shannon*, 2013 WL 4483075 (N.D.N.Y. Aug. 19, 2013) (same); *OhioHealth Corp. v. U.S. Dep't of Veteran Affs.*, 2014 WL 4660092 (S.D. Ohio Sept. 17, 2014) (same); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 5994266 (N.D. Fla. Oct. 9, 2020) (same).

While each of these cases have unique facts, they are similar to Plaintiff's circumstances in that the VA's refusals were simply not rationally connected to the facts found and the choices made—and thus, were "arbitrary and capricious."  Plaintiff emphasizes however that no ill motive is being ascribed to the VA for their actions here. Plaintiff simply maintains that the refusals were unwarranted given the totality of the circumstances.

**C.**     **The VA's refusals were arbitrary and capricious because they failed to consider relevant factors of 38 C.F.R. § 14.804, failed to consider Plaintiff's offers of accommodation, and failed to consider that Plaintiff has no other means to obtain the requested documents and data.**

### 1.     *Statistically Acceptable Sampling of Redacted Medical Records.*

Regarding the statistically acceptable sampling of medical records, the VA's stated basis for refusal is that "it requests documents/medical records that are protected by the Privacy Act, HIPAA, FOIA, and/or related privacy statutes." (AR, US-000534, VA Sept. 20, 2022, denial letter). However, reliance on this factor, § 14.804(f), is unreasonable in the given circumstances. Plaintiff has agreed to have these records *fully redacted* of any personal identifying information. (AR, US-000523). Plaintiff has confirmed that there is a Protective Order in place in the *Schroeder* matter that will also provide confidentiality. (AR, US-000516). Plaintiff's experts have confirmed that such redacted records will not prevent them from conducting their expert analysis. (Hicks Dec., at ¶ 4; Hodgson Dec., at ¶ 4). There is no evidence in the administrative record that the VA even *considered* or *addressed* this accommodation offered by Plaintiff.

The VA further failed to consider and address the fact that Plaintiff has *no other means* to obtain the medical records.  These records are critically necessary to support Plaintiff's medically unnecessary and off label claims in his underlying lawsuit.  The VA has "entirely failed to consider an important aspect of the problem." *Rhoads*, 242 F. Supp. 3d at 990.  The important aspect being: the only way Plaintiff can effectively pursue his FCA claim is by obtaining these records.  The VA's failure to produce these records reflects a willingness to forfeit millions of dollars it never should have paid. Despite this reality, there is no evidence in the administrative record that the VA even considered or addressed this important factor.

In addition to the privacy factor, the VA also cited generally to other § 14.804 factors. (AR, US-000529 to 000532). However, such general citations do not justify its actions. *See, e.g.,*

*OhioHealth Corp. v. U.S. Dep't of Veteran Affs.*, 2014 WL 4660092, at \*4-7 (S.D. Ohio Sept. 17, 2014) (VA's denial based on a generic concern for patient care that failed to address plaintiff's specific request found to be arbitrary and capricious). For example, the VA refers generally to § 14.804(a) ("need to avoid spending the time and money of the United States for private purposes"). The VA's reliance on this factor is unreasonable. First, Plaintiff has offered to pay for the reasonable charges for producing the sampling of medical records. Second, the underlying lawsuit is hardly for "private purposes"—an FCA case is the exact opposite. It seeks remedy for the public taxpayers. The FCA lawsuit alleges troubling mistreatment of veterans for profits which directly impacts their health and well-being. The VA also points to § 14.804(d) ("Whether the demand or request is unduly burdensome"). Again, Plaintiff has offered to pay any reasonable charges for the production of the statistically acceptable medical records. Arguably, there should be no burden too high for the VA to protect veterans. Indeed, the VA has shown the ability to pull these patients' data and medical records through the limited data production obtained for its internal investigation. (AR, US-0000349 to 000360). This was done for the 2015-2017 timeframe in a relatively short turn-around.

The VA also generally cites to § 14.804(l) ("need to minimize VA's possible involvement in issues unrelated to its mission"). Reliance on this factor is particularly capricious considering the VA's "Mission Statement:"

> To fulfill President Lincoln's promise 'To care for him who shall have borne the battle, and for his widow, and his orphan" by serving and honoring the men and women who are America's Veterans."

https://www.va.gov/about_va/mission.asp. It is hard to fathom an issue more important to the VA's interest than protecting veterans from harm while providing medical care. To be clear, Plaintiff's underlying lawsuit is very much related to the VA's mission. Plaintiff's allegations of

wrongdoing are very serious as they directly impact harm to veterans with unnecessary devices in unnecessary medical procedures—including increased rates of amputations. This Court has previously commented that such allegations and the underlying scheme for profit are "troubling" and "morbid." *U.S. ex rel. Schroeder v. Medtronic, Inc.*, 2021 WL 4168140, at *15, fn. 16 (D.Kan. Sept. 14, 2021). Indeed, the allegations are both troubling and morbid, and what has been produced to date unfortunately confirms this passing observation. Some instances of treatment involve up to 17 drug coated balloons, five stents, and three directional atherectomies being used in just <u>one</u> patient on both legs. This is not medical treatment. This is abuse. It is unconscionable—there can be no valid medically acceptable basis to cram so many devices into a human being. (AR, US-000341 to 000360) (*See* Hodgson Dec., ¶ 8).

The VA also failed to consider other applicable § 14.804 factors that support production of the requested medical records. For example, the VA failed to consider and address § 14.804(b) ("How the testimony or production of records would assist VA in *performing its statutory duties*") and § 14.804(c) ("Whether the disclosure of the records … *is necessary to prevent the perpetration of fraud or other injustice in the matter in question*.") (emphasis added). These two factors undoubtedly apply here yet there is no evidence in the administrative record that the VA considered and addressed them. Clearly, the documents produced to date by the VA reflect their full awareness that lack of "evidence-based medicine," and use of "excessive devices" and medically unnecessary procedures occurred at Dole VA. The VA is fully aware that it paid Medtronic for the unnecessary devices purchased through bribery. It is fully aware that it paid WRG for medically unnecessary and harmful procedures on veterans. For sure, these records would not only "assist" the VA in protecting its very constituents, but their production is also necessary to do so. Allowing this to go unaccounted for also encourages future fraud and is a

clear injustice to the taxpayers, and most of all, to the veterans who were subjected to this treatment.

In addition to the VA's Mission Statement noted above, the VA's "Core Values" state:

> VA's five core values underscore the obligations inherent in VA's mission: **I**ntegrity, **C**ommitment, **A**dvocacy, **R**espect, and **E**xcellence. The core values define "who we are," our culture, and how we care for Veterans and eligible beneficiaries. Our values are more than just words – they affect outcomes in our daily interactions with Veterans and eligible beneficiaries and with each other. Taking the first letter of each word—Integrity, Commitment, Advocacy, Respect, Excellence—creates a powerful acronym, "I CARE," that reminds each VA employee of the importance of their role in this Department. These core values come together as five promises we make as individuals and as an organization to those we serve.

*Id*. It is clear from the VA's Mission Statement and Core Values, that its "statutory duties" include producing the redacted medical records, especially in these circumstances. Furthermore, Plaintiff's underlying FCA lawsuit seeks to prevent and hold those accountable for the perpetration of fraud relating to the indefensible medical practices inflicted on veterans. Plaintiff's underlying FCA lawsuit is the very definition of what the VA's Mission Statement and Core Values represent. Yet, in refusing to produce the fully redacted sampling of medical records, there is no evidence in the administrative record that the VA even *considered or addressed* these two important factors. For some reason, it appears content to let all this fraudulent and harmful behavior go unaccounted for.

Finally, as can be discerned from the testimony of former Dole VA Director Ament (Ex. A) and the documentation related to his internal investigation, (AR, US-000331 to 000333), something very insidious occurred relating to veterans' medical care at the Dole VA. Although Mr. Ament's highly relevant testimony was obtained after the VA's denials of Plaintiff's *Touhy* requests, his observations—and the documented results of his investigation—were available to the VA well *before* those denials. Despite the fact that Mr. Ament was the Director of the Dole

VA during the timeframe relevant to the *Schroeder* case, and despite the fact that he initiated an investigation that resulted in a criminal referral to the VA OIG, there is *no evidence in the administrative record* that the VA ever spoke with him or considered the written results of his investigation *before* denying Plaintiff's *Touhy* requests. This is the very definition of "arbitrary and capricious."

In summary, the VA's refusal was arbitrary and capricious because it failed to consider relevant factors of 38 C.F.R. § 14.804, failed to consider Plaintiff's offers of compromise, and failed to consider that Plaintiff has no other means to obtain the requested documents and data to right the wrongs that are identified in the VA documents produced to date. This is analogous to other APA cases whereby the VA's refusals were also held to be arbitrary and capricious.

For example, in *Rhoads v. United States Dep't of Veterans Affs.*, 242 F. Supp. 3d 985 (E.D. Cal. 2017), the Plaintiffs' sought to depose three VA nurses who were fact witnesses to carbon monoxide exposure at a VA clinic. The court found the VA's refusal to produce these three employees for deposition to be unwarranted for several reasons: the VA failed to consider the Plaintiffs' accommodations (*e.g.*, taking the depositions on weekends, before or after work); failed to consider that "there is no substitute" for the witnesses' first-hand testimony; and failed to consider "the importance and relevance of the requested testimony," as the underlying action "directly implicate[s] the health and wellbeing of VA employees and patients." *Id*. at 988-997. Findings that are all analogous here. In short, the court found the VA's actions to be "arbitrary, capricious, and an abuse of discretion," finding that:

> It is undisputed that these VA employees have pertinent information relative to the facts at issue in the State Court Actions and that Plaintiffs have no other means of obtaining discovery. Preventing their testimony would not serve the interests of justice.

*Id*. at 988-997.

In *OhioHealth Corp. v. U.S. Dep't of Veteran Affs.*, 2014 WL 4660092 (S.D. Ohio Sept. 17, 2014), the wife of a deceased military veteran filed medical malpractice suits against his private physicians in a state court action, and against his VA physicians in federal court. In order to defend themselves in the state court action, the private physicians sought to depose the VA physicians. The VA denied their *Touhy* requests on the basis that (1) it concerned private party litigation in which the government had no interest; (2) it could be destructive to the VA's patient services; (3) it would be unduly burdensome; and (4) it would result in the VA appearing partial to one party over the other. In assessing the denial, the court determined that the VA had "neglected to consider Plaintiffs' arguments before rendering a decision" and "failed to sufficiently explain its denial." Again, analogous to the VA's blanket and general citations here. The court found that:

> The VA's denial letters consisted largely of generalized assertions that did not appear to take into account the arguments and affidavits submitted in support of Plaintiffs' *Touhy* requests. The VA's denial letters do not expressly mention Plaintiff's affidavit or any other evidence on which it relied in making its decision.

*Id*. at *1-5.

> The court further found that:

> [T]he VA's denial letters completely ignored the factor on which Plaintiff's *Touhy* requests and affidavits center: Plaintiffs' need for the requested information to not only adequately defend themselves, but to resolve important factual discrepancies and discern exactly what happened during the course of the decedent's medical treatment.

*Id*. at *6.

Finding that the VA's denial letters were merely "paying lip service" to the § 14.804 factors and ignored "the most important aspects of Plaintiffs' *Touhy* requests," the court found

the VA's denials to be arbitrary and capricious. *Id*. at *7. Here, the VA has again "completely ignored" the "most important" factors relating to Plaintiff's requests.

Finally, the matter of *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 5994266 (N.D. Fla. Oct. 9, 2020) was a multidistrict litigation involving product liability actions regarding earplugs manufactured by the defendants and used by service members and veterans. In that matter, the plaintiffs sought to take the deposition of a VA physician regarding strictly factual matters. The VA refused, citing several of the § 14.804 factors. In assessing that denial— and certainly applicable to Schroeder's requests—the court first observed that "[t]he government is not a party to this litigation, but its relationship to this matter is undeniable." *Id*. at *1. The court found the VA's denial unwarranted stating:

> Although there is no dispute that the VA considered relevant *Touhy* regulations under § 14.804, it failed to articulate a rational connection between the facts and its decision to not authorize Dr. Schulman to sit for deposition or produce records.

*Id*. at *5.

The court also rejected specific factors cited by the VA. For example, the VA cited § 14.804(a) ("need to avoid spending the time and money of the United States for private purposes"). However, the court noted that while this is a valid factor, it "does not grant the VA an absolute evidentiary privilege from third-party discovery requests." *Id*. at *7. The court also rejected the VA's reliance on § 14.804(i) ("Whether such release … could be expected to result in the appearance of VA … favoring one litigant over another") and (j) ("Whether such release … could be expected to result in the appearance of VA … endorsing or supporting a position advocated by a party"), noting that "Defendants are only seeking factual testimony from Dr. Schulman … not as an expert." *Id*. Consequently, the court held the VA's refusal to be

"arbitrary and capricious." *Id*.[3] This is analogous to the situation here where Plaintiff seeks only factual information and the VA's reliance on its cited factors is misplaced.

## 2. *Numerical Data*.

Plaintiff seeks purely numerical (non-confidential) data regarding the number of patients per year who obtained interventional procedures performed at the Dole VA cath lab by interventional radiologists for the years 2011 through 2018. After Plaintiff's medical expert analyzes that data, she can then provide an opinion on the size of an acceptable sampling for examination. (Hicks Dec., at ¶ 4). The VA's first position is that it should not have to produce it for the reasons cited above regarding production of medical records. Secondly, it states that doing so will cost $21,387.52.

The VA's refusal to provide annual numbers of patients was arbitrary and capricious. Out of the gate, data figures for the years 2011 through 2018 do not provide any identifying information or any information that involves medical records whatsoever. This request seeks numbers and numbers only. Even if Plaintiff's request was considered a request for medical records, the argument set forth above demonstrates the arbitrary and capricious nature of the VA's response.

Also, the VA has demonstrated its ability to determine this data and pull medical records for review. The VA documents produced to date regarding the internal (Ament) investigation reflect an ability to pull the numbers of patient data and to have these actual records reviewed by

---

[3] After finding an agency's refusal to be arbitrary and capricious, courts will either remand the *Touhy* request back to the agency for "further consideration," (*see*, *e.g.*, *Rhoads*, 242 F.Supp.3d at 997), or will order the agency to produce the requested documents or testimony (*see*, *e.g.*, *Brown*, 2017 WL 3620253, at *8-9). Given that the VA has clearly stated it will not produce the redacted medical records without an order from this court, it would be inefficient to remand the matter back to the VA for further consideration.

a physician.  It did so for the years 2015-2017, and it did so in a relatively short turn around (*e.g.,* from when this investigation started to the date when conclusions were reached covered little over *two months*).  (AR, US-000341 to 000360).  This reflects the VA's ability and willingness to do so in internal investigations, but for some reason, an unwillingness when it comes to (a) taking action to notify and remedy the veteran victims, and (b) claw back the fraudulent payments made to Medtronic for devices and to WRG for services.  It has the capacity to do the same here—the only process where the wrongs inflicted against veterans and the Government can be rectified.

### 3. *Documents Regarding the VA's Investigation into Dole VA Cath Lab.*

As stated above, Plaintiff seeks documents relating to the VA's investigation into conduct at the Dole VA's cath lab involving Medtronic, Inc. The VA has provided some documents responsive to this request (AR, US-000001 to 000360).  However, the VA is unwilling to produce other relevant documents in its possession responsive to this request, specifically:

- A task force was formed by Dole VA Medical Center Director Ament composed of Dana Foley (now Dana Stelter), Susan Hastings, and Ryan Kittrell. All emails and other communications among this task force and Ament and others regarding these investigations and audits.

- All communications involving Dr. Feroz Maqbool. Dr. Maqbool was identified by Mr. Ament as the physician brought in from the Oklahoma VA to review and comment on the peripheral procedures performed at the Dole VA cath lab as part of its internal investigation.

The § 14.804 factors cited as the basis for this refusal are (a): need to avoid spending time and money of the United States for private purposes; (i): avoiding appearance of the VA favoring one litigant over another; and, (l): need to minimize VA's involvement in issues unrelated to its mission. (August 15, 2022 correspondence of VA Office of Inspector General, AR, US-000578 to 000579).

The VA's reliance on these factors is unreasonable in the given circumstances and is therefore arbitrary and capricious. Regarding § 14.804 (a), given the nature of Plaintiff's claim (seeking to redress egregious acts of medical malfeasance inflicted upon veterans in the name of perpetrating a fraud for monetary gain), this is not a "private" matter. It directly affects the VA's duties and obligations. Moreover, Plaintiff has agreed to pay for the reasonable charges incurred in producing these records. Regarding § 14.804 (i), producing these records will not create any "appearance" the VA is favoring any particular litigant in the underlying lawsuit. The records are not only relevant but simply are what they are. There is no VA advocacy here. In other words, they may provide support to Plaintiff's claims but could very well provide support to the Defendants' defenses. Regarding § 14.804 (l), it is simply not rational to cite this factor considering how clearly obvious Plaintiff's underlying lawsuit is "related" to the "mission" of the VA.

As with the medical records and data discussed above, the VA also failed to consider and address important § 14.804 factors, such as (b) ("How the testimony or production of records would assist VA in performing its statutory duties") and (c) ("Whether the disclosure of the records … is necessary to prevent the perpetration of fraud or other injustice in the matter in question."). These two factors undoubtedly apply here yet there is no evidence in the administrative record that the VA *considered and addressed* them. The VA further failed to consider and address the fact that Plaintiff has *no other means* to obtain the medical records other than from the VA. As stated, these records are necessary to support Plaintiff's medically unnecessary claims in his underlying lawsuit. Despite this reality, there is no evidence in the administrative record that VA considered or addressed this important factor.

In *Brown v. United States Dep't of Veterans Affs.*, 2017 WL 3620253 (N.D. Ala. Aug. 23, 2017), the Plaintiff was treated at a VA clinic with the prescription drug Risperdal. The Plaintiff alleged this drug caused injury to him and sued the manufacturer. The VA was not a party. In the underlying litigation, the Plaintiff sought the deposition and medical records of his VA treating physician. The plaintiff sought "entirely factual" testimony, not any expert testimony. The VA refused to comply on the primary basis that "the VA and the government have no direct interest in the litigation." In considering this stated basis, the court observed that while deference must be given to an agency's reasons, "those reasons must make sense within the general context of the broad obligation to comply with the public's entitlement to 'every man's evidence.'" The court found that the VA's stated reason simply did not provide a valid basis for refusing to provide the factual evidence relevant to the litigation. Therefore, the court held the VA's refusal to be "arbitrary, capricious, and an abuse of discretion." *Id*. at *1-4. In this situation, the VA's stated reasons for refusing to comply with Plaintiff's requests also simply do not provide a valid basis to do so and do not make sense.

### 4. *VA Audits or Studies Regarding Costs and Clinical Outcomes*.

Plaintiff seeks documents that reflect any audits or studies comparing the costs or clinical outcomes of performing procedures at the Dole VA's cath lab compared to other VA facilities performing the same procedures. The VA has stated its agreement to provide documents responsive to this request, but only upon payment of its estimated cost basis of $17,443.20. (September 20, 2022 correspondence of VA Office of Chief Counsel, AR, US-000528 to 000536). Plaintiff maintains these costs are not appropriate for what is being requested and what is necessary to produce it. Given the relative ease with which the VA was able to quickly pull the patient data regarding two years of procedures at the Dole VA for use in its internal (Ament)

investigation, surely this request is not so onerous. (AR, US-000341 to 000360). Nevertheless,

Plaintiff agrees to pay the *reasonable* charges associated with this request.

WHEREFORE, based upon the arguments and authority above, Plaintiff respectfully

requests an order from this Court:

1. Compelling the VA to produce the requested numerical data regarding the annual number of patients treated with interventional procedures by interventional radiologists at the Dole VA cath lab for the years 2011 through 2018, along with submission of reasonable charges for that production of data;

2. Compelling the VA to produce the requested statistically acceptable sample (as to be determined by Plaintiff's expert) of fully redacted medical records relating to peripheral arterial disease procedures at the Dole VA cath lab for the years 2011 through 2018, along with submission of reasonable charges for that production of records;

3. Compelling the VA to produce copies of all documents relating to the VA's investigation into the conduct at the Dole VA's cath lab involving WRG and Medtronic, Inc., and specifically: all emails and communications among the task force formed by Dole VA Medical Center Director Ament regarding the investigation, along with submission of reasonable charges for that production of documents; and,

4. Compelling the VA to produce copies of all documents relating to any audits or studies comparing the costs or clinical outcomes of performing procedures at the Dole VA's cath lab to other VA facilities performing the same procedures, as well as remanding the matter back to the VA in order to reconsider and resubmit reasonable charges for that production of documents.

Respectfully submitted,

Carrie Mulholland Brous KS #18157
Cristina Olson D. Kan. #79005
**Brous Law LLC**
3965 West 83rd Street, Ste. #115
Prairie Village, KS  66208
(913) 209-8596
cbrous@brouslaw.com
colson@brouslaw.com



Brendan J. Donelon, KS #17420
4600 Madison, Suite 810
Kansas City, Missouri 64112
Tel:     (816) 221-7100
Fax:     (816) 709-1044
brendan@donelonpc.com

*/s/ Daniel W. Craig*
Daniel W. Craig, D.Kan. #78146
6642 Clayton Rd., #320
St. Louis, Missouri 63117
Tel:     (314) 297-8385
Fax:     (816) 709-1044
dan@donelonpc.com

Attorneys for Plaintiff


I hereby certify that on January 11, 2023 the above and foregoing was sent pursuant to this Court's CM/ECF procedures to the attorneys of record in this matter.

*/s/ Daniel W. Craig*