IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THOMAS SCHROEDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| and | ) | |
| | ) | |
| MEDTRONIC, INC. | ) | |
| | ) | |
| Intervenor Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-2209-DDC-KGG |
| | ) | |
| THE UNITED STATES DEPARTMENT | ) | |
| Of VETERANS AFFAIRS, a Federal | ) | |
| Agency, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS' RESPONSE TO PLAINTIFF'S OPENING BRIEF IN SUPPORT OF PLAINTIFF'S ADMINSTRATIVE PROCEDURE ACT CLAIM**

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... 3

INTRODUCTION ......................................................................................................................... 6

BACKGROUND ........................................................................................................................... 7

   1.   Schroeder seeks information from the VA to use in an action he filed under the False Claims Act. ................................................................................................................................ 7

   2.   The VA's *Touhy* Regulations. ............................................................................................. 8

   3.   Schroeder's Touhy Requests. .............................................................................................. 9

ARGUMENT AND AUTHORITIES ........................................................................................... 11

   1.   Standard of Review ............................................................................................................ 11

   2.   Remedy ............................................................................................................................... 12

   3.   Discussion ........................................................................................................................... 13

      A.  The VA properly determined under 38 C.F.R. § 14.804(a), (d), and (l) that the requests were unduly burdensome, and the VA needed to conserve the time of its personnel and minimize the VA's possible involvement in issues unrelated to its mission .................... 13

      B.  The VA properly considered the applicability of confidentiality protections under 38 C.F.R. § 14.804(f) ................................................................................................................ 14

      C.  The cases cited by Relator in which parties successfully challenged the VA's denial of *Touhy* requests to the VA did not involve a *qui tam* ....................................................... 15

      D.  The VA correctly concluded under 38 C.F.R. § 14.804(i) that producing the requested documents and information would result in the appearance of the VA or the Federal government favoring one litigant over another ................................................................ 16

      E.  Schroeder incorrectly seeks *de novo* review ................................................................ 16

CONCLUSION ............................................................................................................................ 18

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Ass'n of Pac. Fisheries v. EPA*,
  615 F.2d 794 (9th Cir. 1980) ................................................................................................. 12

*Attorney Gen. of Okla. v. Tyson Foods, Inc.*,
  565 F.3d 769 (10th Cir. 2009) ............................................................................................... 12

*Barnet v. Ill. State Bd. of Ill.*,
  No. 02 C 2401, 2002 WL 1560013 (N.D. Ill. 2002) ............................................................. 12

*Camp v. Pitts*,
  411 U.S. 138, (1973) ............................................................................................................. 12

*Copar Pumice Co. v. Tidwell*,
  603 F.3d 780 (10th Cir .2010) ............................................................................................... 12

*Edwards v. U.S. Dep't of Justice*,
  43 F.3d 312 (7th Cir. 1994) ................................................................................................... 11

*Florida Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ........................................................................................................ 13, 18

*Forest Guardians v. U.S. Fish & Wildlife Serv.*,
  611 F.3d 692 (10th Cir. 2010) ............................................................................................... 11

*Forest Guardians v. U.S. Forest Serv.*,
  641 F.3d 423 (10th Cir. 2011) ............................................................................................... 11

*FTC v. Accusearch Inc.*,
  570 F.3d 1187 (10th Cir. 2009) ............................................................................................. 11

*INS v. Elias-Zacarias*,
  502 U.S. 478 (1992) .............................................................................................................. 14

*Islander E. Pipeline Co. v. McCarthy*,
  525 F.3d 141 (2d Cir. 2008) .................................................................................................. 12

*Laber v. Austin*,
  No. 18-1351-JWB, 2022 WL 17361437 (D. Kan. Dec. 1, 2022) .......................................... 15

*Miccosukee Tribe of Indians of Fla. v. United States*,
  566 F.3d 1257 (11th Cir. 2009) ............................................................................................. 11

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) .................................................................................................. 11

*New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*,
 565 F.3d 683 (10th Cir. 2009) ................................................................................ 11

*Sierra Club v. Marita*,
 46 F.3d 606 (7th Cir. 1995) .................................................................................... 12

*Sierra Club v. Van Antwerp*,
 526 F.3d 1353 (11th Cir. 2008) .............................................................................. 11

*Sw. Ctr. for Biological Diversity v. United States Forest Serv.*,
 100 F.3d 1443 (9th Cir. 1996) ................................................................................ 12

*U. S. ex rel. Touhy v. Ragen*,
 340 U.S. 462 (1951) .................................................................................................. 8

*U.S. ex rel. Eisenstein v. City of New York, New York*,
 556 U.S. 928 (2009) .................................................................................................. 8

*Utah Shared Access Alliance v. Carpenter*,
 463 F.3d 1125 (10th Cir. 2006) .............................................................................. 14

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
 529 U.S. 765 (2000) .................................................................................................. 7

*Wilderness Workshop v. U.S. Bureau of Land Mgmt.*,
 531 F.3d 1220 (10th Cir. 2008) .............................................................................. 12

*Wyoming v. U.S. Dep't of Agric.*,
 661 F.3d 1209 (10th Cir. 2011) .............................................................................. 12

**Statutes**

5 U.S.C. § 301 ................................................................................................................. 8

5 U.S.C. § 500 ................................................................................................................. 6

5 U.S.C. § 522a ......................................................................................................... 9, 15

5 U.S.C. § 706 ........................................................................................................... 6, 11

5 U.S.C. § 706(2)(A) ................................................................................................ 6, 11

31 U.S.C. §§ 3729 - 3733 ............................................................................................... 7

38 U.S.C. § 7332 ........................................................................................................... 15

**Rules**

Fed. Rule Civ. Proc. 26(a) .................................................................................................. 7

Fed. Rule Civ. Proc. 34 ...................................................................................................... 7

Fed. Rule Civ. Proc. 37 ...................................................................................................... 7

**Regulations**

38 C.F.R. § 1.493 ............................................................................................................. 15

38 C.F.R. § 14.800 - 810 ........................................................................................... 7, 9, 10

38 C.F R. § 14.800(a) ........................................................................................................ 8

38 C.F R. § 14.800(b) ........................................................................................................ 8

38 C.F.R. § 14.804(a) ............................................................................................. 8, 13, 14

38 C.F.R. § 14.804(d) ...................................................................................................... 13

38 C.F.R. § 14.804(f) ....................................................................................................... 14

38 C.F R. § 14.804(i) ....................................................................................................... 16

38 C.F.R. § 14.804(l) ....................................................................................................... 13

38 C.F R. § 14.804(o) ........................................................................................................ 8

The United States of America, by Duston J. Slinkard, United States Attorney, and Christopher Allman and Jon P. Fleenor, Assistant United States Attorneys, respectfully states as follows in response to Plaintiff's Opening Brief in support of his Administrative Procedure Act claim:

## INTRODUCTION

Plaintiff brings this action under the Administrative Procedures Act (APA), 5 U.S.C. §§ 500 -706, seeking to compel the United States Department of Veterans Affairs (VA) to produce veterans' medical records, documents regarding internal VA investigation or review of some defendants in other pending litigation brought by the Plaintiff, audits or studies comparing a Kansas VA hospital facility's costs and clinical outcomes to other VA facilities over a period of seven years, and data showing the number of patients that received certain treatments at a Kansas VA hospital over a period of seven years. Plaintiff sought such information pursuant to the VA's *Touhy* regulations, 38 C.F.R. §§ 14.800 - 810.

Over a period of months, Plaintiff submitted a series of *Touhy* requests to the VA seeking depositions of current and former VA personnel.  The VA and Plaintiff exchanged correspondence and emails and had discussions about the requests.  The VA granted some requests for depositions, produced documents to the Plaintiff in response to requests and denied other requests the Plaintiff had revised.

The Plaintiff filed his First Amended Complaint on September 28, 2022 (Doc. 9).

The Court should deny Plaintiff's requests because the VA's decisions were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

# BACKGROUND

**1.      Schroeder seeks information from the VA to use in an action he filed under the False Claims Act**

The Plaintiff Schroeder seeks information and documents from the VA to use in an action he brought under the False Claims Act, 31 U.S.C. §§ 3729 - 3733, styled *U.S. ex rel. Schroeder v. Hutchinson Regional Medical Center et al*. Case No.  2:17-cv-02060-DDC-KGG, which alleges false claims arising from events at the Robert J. Dole VA Medical Center (Dole VA). The FCA permits either the Attorney General, § 3730(a), or a private party, § 3730(b), to initiate a civil action alleging fraud on the Government. A private enforcement action under the FCA is called a *qui tam* action, with the private party referred to as the "relator." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 (2000). When a relator initiates such an action, the United States reviews the claim and decides whether it will "elect to intervene and proceed with the action," §§ 3730(b)(2), (b)(4); see also § 3730(c)(3) (permitting the United States to intervene even after the expiration of the 60–day period "upon a showing of good cause"). The relator has the right to conduct the action with respect to the claims on which the government declines to intervene. *Id*. § 3730(b)(4)(B) and (c)(3). The relator is entitled to 15 to 25 percent of the proceeds of the claims on which the government intervened. *Id*. § 3730(d)(1). The relator is entitled to 25 to 30 percent of the proceeds of the claims on which the United States declined to intervene. *Id*. § 3730(d)(2).

"Congress expressly gave the United States discretion to intervene in FCA actions—a decision that requires consideration of the costs and benefits of party status. See, *e.g.,* Fed. Rule Civ. Proc. 26(a) (requiring a party to disclose certain information without awaiting any discovery request); Rule 34 (imposing obligations on parties served with requests for production of information); Rule 37 (providing for sanctions for noncompliance with certain party

7

obligations)." *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 933-34, (2009).

The United States declined to intervene in Schroeder's *qui tam* action. *U.S. ex rel. Schroeder v. Hutchinson Regional Medical Center et al*. Case No.  2:17-cv-02060-DDC-KGG (Doc. 19). Since the United States declined to intervene, it is not a "party" to that action. *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 933 (2009) ("The United States, therefore, is a "party" to a privately filed FCA action only if it intervenes in accordance with the procedures established by federal law."). Nevertheless, the United States still monitors the case and must approve any settlement agreement or decision to dismiss the case. And as indicated above, if the Relator prevails in this case, the United States will receive between seventy to seventy-five percent of the Relator's net recovery.

**2.	The VA's *Touhy* Regulations**

Under the federal housekeeping statute, 5 U.S.C. § 301, a federal agency may adopt procedures, known as *Touhy* regulations, for responding to requests for testimony or documents. *See U. S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

The VA's Touhy regulations are set forth in 38 C.F R. §§ 14.800 through 14.810. The regulations "establish policy, assign responsibilities and proscribe procedures with respect to . . . [t]he production or disclosure of official information or records of the [VA] . . . and [t]he testimony of present or former VA personnel . . . ." 38 C.F R. § 14.800(a) and (b).

The VA 's *Touhy* regulations require that "[i]n deciding whether to authorize the disclosure of VA records or information . . . VA personnel responsible for making the decision should consider" certain enumerated factors.  C.F R. § 14.804. The factors are listed in C.F R. § 14.804(a) through (o). The Administrative Record before the Court shows that the factors at issue in this action are the following:

      (a) The need to avoid spending the time and money of the United States for private purposes and to conserve the time of VA personnel for conducting their official duties servicing the Nation' veteran population;

      (d) Whether the demand or request is unduly burdensome or otherwise inappropriate under the applicable court or administration rules;

      (f) Whether the testimony or production of records would violate a statute, executive order, regulation, or directive. (Where the production of a record or testimony as to the content of a record or about information contained in a record would violate a confidentiality statute's prohibition against disclosure, disclosure will not be made. Examples of such statutes are the Privacy Act, 5 U.S.C. § 522a, and sections 5701, 5705, and 7332 of Title 38, United States Code.);

      (i) Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government favoring one litigant over another; and

      (l) The need to minimize VA's possible involvement in issues unrelated to its mission.

38 C.F R. § 14.804.

### 3. Schroeder's Touhy Requests

After the United States declined to intervene in his *qui tam* action, Schroeder continued with the litigation as the Relator.[1] Between January and July 2022, he made a series of requests to the VA under the department's *Touhy* regulations, 38 C.F.R. §§ 14.800 – 810.[2] (CAR US-000499 – US000514; US-000540 – US000555; US-000000515 – US000519; US-000556 – US-000574; US-000537 – US000539; US-000575 – US000577; US-000520 – US-000524).

The VA Office of Chief Counsel and the Relator's counsel also exchanged email and conducted phone conferences with regarding the requests. (CAR US-000361 – US-000490; US-000525 to US-000527; US-000667 to US-000691). The VA granted the *Touhy* requests for

---

[1] For convenience, Plaintiff Schroder will be referred to as "Schroeder" or Relator."

[2] The Relator continues to make additional *Touhy* requests to the VA for depositions and more deposition requests have been granted by the VA.

9

depositions (CAR US-US-000528 to US-000529) and the VA produced hundreds of pages of documents in response to some of the requests. (CAR US-US-000001 to US-000360).

Relator ultimately revised his *Touhy* requests by withdrawing some and limiting what he was seeking to a list set forth in his July 1, 2022, correspondence to the VA. (CAR US-000520 to US-000524).

The Relator seeks review of four specific requests:

1. Data reflecting the annual number of interventional procedures performed in the Dole VA cath lab by interventional radiologists for the years 2011 through 2018. (CAR US – 000522). Doc. 35 p. 11;

2. A statistically acceptable sample of patients' records regarding interventional procedures performed in the Dole VA cath lab by interventional radiologists for the years 2011 through 2018. (CAR US-000522). Doc. 35 p. 12;

3. Documents that address any complaints or investigation into conduct at the Dole VA's catheterization lab involving Medtronic, Inc. or Covidien, Inc. or their representatives (e.g., documents from internal incident reports, Facility Administrative Investigative Board ("AIB"), Office of Inspector General -either VA or Veterans Health Administration office of accountability and whistleblower protection or U.S. GAO). (CAR US – 00520 -21). Doc. 35 p. 12[3];

4. Documents that reflect any audits or studies comparing the costs to clinical outcomes of performing procedures at the Dole VA's catheterization lab compared to other facilities performing the same procedures. This should include data reflecting the procedure performed, number [sic] medical devices utilized in each procedure, serial number and description of devices – this data should be available and downloadable via the CPRS and/or Clinical Assessment Report and Tracking ("CART") systems. (CAR US – 00521). Doc. 35 p. 13.

---

[3] Relator's brief references Director Ament's investigation. However, Mr. Ament's deposition describing his actions was not taken until December 13, 2022, after this action was filed.

## ARGUMENT AND AUTHORITIES

**1.      Standard of Review**

"The scope of judicial review for a court reviewing an Administrative Procedure Act claim is set forth in 5 U.S.C. § 706. Pursuant to 5 U.S.C. § 706(2)(A), the reviewing court may only reverse the agency's [decision] if the agency action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A)." *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 314 (7th Cir. 1994). "The arbitrary and capricious standard is 'exceedingly deferential.' [A court is] not authorized to substitute [its] judgment for the agency's as long as its conclusions are rational." *Miccosukee Tribe of Indians of Fla. v. United States,* 566 F.3d 1257, 1264 (11th Cir. 2009) (quoting *Sierra Club v. Van Antwerp,* 526 F.3d 1353, 1360 (11th Cir. 2008).  In regard to this deferential review, the Tenth Circuit has stated:

> Under the APA, we review the district court's decision de novo, *Forest Guardians*, 641 F.3d at 428, but we will not overturn the agency's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *accord New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,* 565 F.3d 683, 704 (10th Cir. 2009).
>
> In conducting our review, "we must determine whether the [agency]: (1) acted within the scope of [its] authority, (2) complied with prescribed procedures, and (3) took action that was neither arbitrary and capricious, nor an abuse of discretion." *Forest Guardians v. U.S. Fish & Wildlife Serv.,* 611 F.3d 692, 704 (10th Cir. 2010) (alterations in original) (internal quotation marks omitted). Agency action is "arbitrary and capricious" if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or if the agency action "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Copar Pumice Co. v. Tidwell*, 603 F.3d 780, 793–94 (10th Cir .2010) (*quoting Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)) (internal quotation marks omitted). In applying this standard, we also "accord agency action a presumption of validity," and "the burden is on the petitioner to demonstrate that the action is arbitrary and capricious." *Tidwell*, 603 F.3d at 793.
>
> We review the district court's order of injunctive relief for abuse of discretion. *FTC v. Accusearch Inc.,* 570 F.3d 1187, 1201 (10th Cir. 2009). "An abuse of discretion occurs only when the trial court bases its decision on an erroneous conclusion of law or

> where there is no rational basis in the evidence for the ruling." *Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, 531 F.3d 1220, 1223–24 (10th Cir. 2008). We have previously characterized an "abuse of discretion" as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Attorney Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009).

*Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1226–27 (10th Cir. 2011).

"In this context the court considers only whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; the ultimate standard of review is a narrow one and the court may not substitute its judgment for that of the agency." *Barnet v. Ill. State Bd. of Ill.*, No. 02 C 2401, 2002 WL 1560013, *2 (N.D. Ill. 2002) (citing *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995)).

Applying these standards, the focus is on "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, (1973) (*per curiam*); *see also Sw. Ctr. for Biological Diversity v. United States Forest Serv.,* 100 F.3d 1443, 1450 (9th Cir. 1996) (citing *Camp.*).

The VA filed with its Answer a Certified Administrative Record ("CAR") (Doc. through Doc. 14-4). The Relator does not dispute the Certified Agency Record submitted in this action.

Finally, parties may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision." *Ass'n of Pac. Fisheries v. EPA,* 615 F.2d 794, 811–12 (9th Cir. 1980).

**2. Remedy**

After reviewing the record and applying the above standards, if a court finds the agency decision was in error, the proper remedy is to remand the matter to the agency for further review and action. Remand to the agency is appropriate because "[a]reviewing court may not itself weigh the evidence or substitute its judgment for that of the agency." *Islander E. Pipeline Co. v. McCarthy,* 525 F.3d 141, 150 (2d Cir. 2008). As the U.S. Supreme Court explained:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985).

**3.      Discussion**

The record contains not only the multiple and evolving requests, but also many email communications between the parties which show that the parties also engaged in telephonic discussions regarding the requests. (CAR US-000361 - US-000490; US-000525 to US-000527; US-000667 to US-000691). The record shows the Relator withdrew some requests and limited other requests. The record shows the VA granted depositions for witnesses and produced a substantial number of documents. (CAR US-000528 - US-000529). Ultimately, the administrative record shows that the VA did not act arbitrarily and instead worked extensively with the Relator to fully review and properly address the *Touhy* requests.

>  **A.    The VA properly determined under 38 C.F.R. § 14.804(a), (d), and (l) that the requests were unduly burdensome, and the VA needed to conserve the time of its personnel and minimize the VA's possible involvement in issues unrelated to its mission**

The VA's denial of the *Touhy* requests is essentially a policy decision about the best use of the agency's resources. The VA examined what time and resources would be required to obtain, redact if required, and produce the documents Plaintiff sought, some of which cover a lengthy period of seven years. Based upon this, the VA concluded that the requests were "unduly burdensome" under 38 C.F.R. §§ 14.804(d). (CAR US-000528 to US-000536). The VA appropriately decided what was the best use of its limited resources as provided under the

13

regulations, and it determined that the burden of responding was not. (CAR US-000528 to US-000536; US – 000578 - 79). 38 C.F.R. §§ 14.804(a).

The record shows the extent the VA considered the burden and impact on the VA and its personnel as the VA also provided Plaintiff detailed information showing the agency's calculations of time and costs required to respond to the requests (CAR US-000536), including the time and resources that would be required for redacting confidential information. Relator only challenges one of the cost estimates. (Doc. 35 p. 27). However, deference should be given to these factual findings. In the context of informal agency action, the agency's findings of fact are reviewed under the "arbitrary and capricious" standard, though the "substantial evidence" standard is also sometimes referenced in that context as well. *See, e.g., Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1134 (10th Cir. 2006). Under the substantial evidence standard, an agency's fact-based conclusion must be sustained unless no reasonable factfinder could have reached that conclusion based on the administrative record. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

### B.  The VA properly considered the applicability of confidentiality protections under 38 C.F.R. § 14.804(f)

To the extent the requests may involve the disclosure of medical records, the VA properly concluded, under 38 C.F.R. §§ 14.804(f), that it could not release such information without the consent of the person whose information is sought, or an appropriate court order to comply with statutory requirements governing confidentiality such as the Health Insurance Portability and Accountability Act, Pub. L. No. 104-191, (HIPAA), the Privacy Act of 1974, 5

U.S.C. §§ 522a, and 38 U.S.C. § 7332.[4] (CAR US-000530; 532-534). Nothing in that decision is arbitrary, capricious, or whimsical.

      **C.**    **The cases cited by Relator in which parties successfully challenged the VA's denial of *Touhy* requests to the VA did not involve a *qui tam***

In his opening brief, Relator cites five cases in which the court found for the requesting party and against the VA, granting the requesting party's *Touhy* request. But none of those cases involved a *qui tam* in which the United States, while not a "party," is ultimately the recipient of seventy to seventy-five percent of the net recovered proceeds. Litigants seeking damages often make choices about their willingness to provide sensitive medical records in discovery, even if that choice dramatically reduces their potential recovery if liability is established. *See, e.g., Laber v. Austin,* No. 18-1351-JWB, 2022 WL 17361437, at *28 (D. Kan. Dec. 1, 2022) ("Plaintiff could possibly recover nominal damages, costs, and compensatory damages, which were set at $1. (Doc. 215 at 46.)") and (in that employment discrimination case in which the statutory cap for emotional damages is $300,000, plaintiff stipulates to compensatory damages of $1 rather than provide the Department of Defense with copies of his medical records) (Doc. 168, Attached as Exhibit A). That type of balancing—disclosure of private information v. potential recovery—is not arbitrary, capricious, or whimsical, but instead a product of the VA making a decision based upon the consideration of competing interests, including the use of its limited resources to care for veterans.

---

    [4] The VA will also have to determine whether the individual's records contain a diagnosis, prognosis, or treatment relating to drug abuse, alcoholism or alcohol abuse, infection with the human immunodeficiency virus, or sickle cell anemia. Before authorizing the release of such records, a court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services and shall impose appropriate safeguards against unauthorized disclosure. The VA advised the relator of 38 C.F.R. § 1.493 governing the procedures and criteria for authorizing the disclosure of such records.

15

> D. **The VA correctly concluded under 38 C.F.R. § 14.804(i) that producing the requested documents and information would result in the appearance of the VA or the Federal government favoring one litigant over another**

Medtronic, Inc., a defendant in the qui tam action, has intervened as a plaintiff in this action. (Doc. 16). Medtronic's position stated in its opening brief supports the VA's conclusion (CAR US – 000579) that producing to the Relator some of the documents he requested would favor one litigant over another. Doc. 37 p. 15. Should the court grant the relief sought by Relator then the VA may have to endure the additional burden, time, and expense of producing records satisfactory to the Intervenor-Plaintiff. And even if the Relator pays the VA for its expenses of producing records, that task will detract from the VA's primary mission.

> E. **Schroeder incorrectly seeks *de novo* review**

The record in this case demonstrates that the VA did not act arbitrarily, capriciously, or whimsically. Instead, the VA duly considered the requests and properly weighed the agency's interests and its resources as required under its *Touhy* regulations.

In reality, the Relator requests the Court to substitute its judgment for the VA's by suggesting that the VA somehow ignored the benefits it would receive if it would give the information he seeks. The Relator goes so far to state the VA is "content to let fraudulent and harmful behavior go unaccounted for." (Doc. p. 20). This hyperbole shows the Relator's position is that an agency may not weigh its interests, its resources, or its obligations as required by *Touhy* regulations for records sought in a *qui tam* action in which the United States declined to intervene. The Relator asks this Court to ignore the burden the requests would impose and to compel the VA to produce materials he seeks. Relator also overlooks that the VA carefully considered the requests, granted some requests, but denied some—fully aware of the Relator's allegations and presumably aware of what he asserts that VA employees learned through any internal investigations or audits. Relator's conviction in his case does not mean that the VA must

16

abandon its obligations, interests, and discretion on how to use its limited resources; restated, litigation is not the primary mission of the VA.

The Court should also consider the context surrounding the agency's responses to these *Touhy* requests. Relator seeks some of information to see whether there is support for his *qui tam* claims that private physicians contracted by the VA used and/or implanted devices that were not medically necessary. Before the *Touhy* requests, Relator's FCA claim concerning the medical necessity of the procedures had been dismissed by the court in the *qui tam* action. *U.S. ex rel. Schroeder v. Hutchinson Regional Medical Center et al*. Case No. 2:17-cv-02060-DDC-KGG, Doc. 67. And the court has yet to rule on motions to dismiss the claim in the Relator's Fifth Amended Complaint filed in October 2022. *U.S. ex rel. Schroeder v. Hutchinson Regional Medical Center et al*. Case No. 2:17-cv-02060-DDC-KGG, Doc. 243 - 247.

Even if the Court concludes that the VA must utilize it limited resources to search, redact, and produce veterans' medical records, Relator has not provided sufficient information to the VA regarding the request for some sample of these types of records. In addition to the *Touhy* regulation factors considered by the VA, its decision denying the request for a "sample" of medical records was not arbitrary because the Relator did not fully explain what he is seeking. The Relator requests data about the number of patients who received certain medical procedures over seven years so that his experts may develop a random sample of medical records for further review. The Relator provided to the VA the information concerning his expert witnesses in January of this year – after the *Touhy* requests. The Relator did not describe for the VA the methodology for developing a sample. Further, Relator did not show that the sample would be stipulated to by the opposing parties in the FCA action or sanctioned by the court. What is entirely possible is that further redacted medical records would need to be produced in the

17

litigation, assuming the claim survives the motions to dismiss and assuming the records show what Relator hopes for.

## CONCLUSION

The Relator essentially seeks to have this Court issue a new decision based on a *de novo* inquiry of the undisputed agency record. Applying the required deferential standard of review, the Court should deny that request. Even if the Court concludes that the VA did not properly deny the requests, the proper remedy is to remand this issue back to the VA for further investigation and explanation. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729 (1985).

For these reasons, the VA respectfully requests that the Court deny the Relator's requests to set aside the VA's decisions and deny his request to compel the VA to produce the documents and information sought in the *Touhy* requests.

Respectfully submitted,

DUSTON J. SLINKARD
United States Attorney

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney
Ks. S.Ct. No. 14225
500 State Avenue, Suite 360
Kansas City, Kansas  66101
Tel:  (913) 551-6730; Fax:  6541
Email: Chris.Allman@usdoj.gov

s/ Jon P. Fleenor
JON P. FLEENOR #14002
Assistant United States Attorney
District of Kansas
500 State Ave., Suite 360
Kansas City, Kansas 66101
Tel:  (913) 551-6730; Fax:  6541
Email: Jon.Fleenor@usdoj.gov

Attorneys for Defendant

## CERTIFICATE OF SERVICE

   I hereby certify that on February 9, 2023, the foregoing was filed with the Court by using the CM/ECF System, which will send a notice of electronic filing to all attorneys of record.

                 s/ Jon P. Fleenor
                 JON P. FLEENOR #14002
                 Assistant United States Attorney