**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| THOMAS SCHROEDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 22-2209-DDC |
| and ) | |
| ) | |
| MEDTRONIC, INC. ) | |
| ) | |
| Plaintiff/Intervenor, ) | |
| ) | |
| vs. ) | |
| ) | |
| THE UNITED STATES ) | |
| DEPARTMENT OF VETERANS ) | |
| AFFAIRS, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF SCHROEDER'S MOTION TO ENFORCE JUDGMENT**

COMES NOW the Plaintiff, Thomas Schroeder, by and through undersigned counsel, and hereby requests this Court to issue an order requiring the Defendant the United States Department of Veterans Affairs ("VA") to comply with this Court's May 16, 2023 Order and related Judgment (Docs. 53, 54) regarding the Plaintiff's *Touhy* requests.

**I.      Procedural Background**

Plaintiff Schroeder filed this action against the VA under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.  Plaintiff-Intervenor Medtronic, Inc. ("Medtronic") subsequently intervened.  Plaintiff requested an order from this Court compelling the VA to produce certain documents and information within the VA's sole possession—including medical records and related data for a sample of veterans as well as documents related to any internal investigations—regarding the Robert J. Dole Medical Center's ("Dole VA") peripheral catheterization ("cath") lab.  On May 16, 2023, this Court issued an Order, finding that "the

1

VA's refusal to provide the documents and information requested by plaintiff Schroeder was arbitrary, capricious, and an abuse of discretion under the APA." (Doc. 53). *Schroeder v. United States Department of Veterans Affairs*, __ F.Supp.3d __, 2023 WL 3478052, at *19 (D.Kan. May 16, 2023). The Court remanded the matter back to the VA "for further consideration of plaintiff Schroeder and plaintiff-intervenor Medtronic, Inc.'s requests for documents and information." *Id*.[1] The Clerk subsequently entered Judgment in this matter consistent with the Court's Memorandum and Order. (Doc. 54)

On June 15, 2023, Defendant VA submitted a "Status Report" to the Court, whereby it stated that "it is diligently working to comply with the court's order (Doc. 53) as reflected in the attached letters but cannot actually produce the medical records to the requesting parties until an order [is entered] authorizing production under the Privacy Act, 5 U.S.C. § 552a." The referenced "attached letters" were correspondences sent by the VA separately to counsel for Plaintiff Schroeder and Plaintiff-Intervenor Medtronic on June 15, 2023. In the correspondence sent to counsel for Plaintiff Schroeder, the VA states it is a "memorialization of what VA intends to produce" to Plaintiff pursuant to the Court's Order. (**Exhibit A**). In pertinent part, the VA stated its agreement in "producing 132 patient records." *Id*. at pgs. 1-2. This number reflects Schroeder's request—and the VA's agreement—for a 20% sample of the VA's medical records for patients seen in the Dole VA cath lab from 2011 through its closing in April 2018.

---

[1] The Court further ordered "the Clerk of the Court to enter a judgment consistent with this Order and close the case." However, this Court retained jurisdiction after remand to consider and rule on the VA's subsequent motion discussed below. This is consistent with the concept that "ordinarily an order remanding a case to an administrative agency is not final." *Travis v. Sullivan*, 985 F.2d 919, 920 (7th Cir. 1993); *see also*, *Wildlife v. Kempthorne*, 2006 WL 2844232, at *12 (D.D.C. Sept. 29, 2006) ("A court retains jurisdiction to enforce the terms of its remand order when an agency fails to meet them.").

Also on June 15, 2023, counsel for the VA emailed this Court noting the agreement reached with Plaintiff Schroeder and attaching a "jointly proposed supplemental order" for the Court's approval. (**Exhibit B**).  In this jointly proposed order, the Parties requested that the court find that "the records sought by Plaintiff and Intervenor Plaintiff are relevant to the claims and defenses in the [Schroeder] *qui tam* action," and "that disclosure of the records requested is appropriate under 5 U.S.C. § 552a(b)(11), and that any Privacy Act concerns are outweighed by the need for disclosure." *Id*.  The jointly proposed order further requested that the court order that, "Defendant is authorized to produce ***all medical records*** regarding interventional radiology procedures performed at the Robert J. Dole Medical Center in Wichita, Kansas that are responsive to Plaintiff Thomas Schroeder *Touhy* request No. 2 …. The parties will agree in writing to a statistical sample size." *Id*. (emphasis added).

Finally, also on June 15, 2023, Defendant VA filed with this Court a "Motion for Order Under the Privacy Act and 38 U.S.C. § 7332." (Doc. 60).  The purpose of this motion was for the VA to "demonstrate its need for an order [regarding Medtronic's requests] similar to the proposed order submitted by the VA and Plaintiff Schroeder." Defendant VA stated such an order was needed "to ensure ***patient medical data*** is safeguarded as it produces documents to Medtronic in response to its *Touhy* request." *Id*. (emphasis added).

On June 30, 2023, this Court issued its Order regarding Defendant VA's motion.  (Doc. 69).  In this Order, the Court found "that the records sought by plaintiff and intervenor plaintiff are relevant to the claims and defenses in the [Schroeder] *qui tam* action," and "that disclosure of the records requested is appropriate under 5 U.S.C. § 552a(b)(11), and that any Privacy Act concerns are outweighed by the need for disclosure."  The Court thus granted the motion "authorizing the VA to ***release the requested records***." *Id*. (emphasis added).

3

## II.    Factual Background to Issues Presented in this Motion

Defendant VA subsequently began its rolling production of the medical records and data authorized to be released by the Court's Order.

1.      VA stated that 661 patients were seen by interventional radiologists at the Dole VA cath lab between 2011-2018.  A twenty percent sampling equals 132.  The VA broke down these figures and the sample size from each year as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FY15 - FY18 = 213 Patients.  213 * 20% = 43 patient records required to be pulled | | | | | | | |
| | | | | | | | |
| FY15 - 78 patients 78 * 20% = 15 patient records required to be pulled | | | | | | | |
| FY16 - 66 patients 66 * 20% = 14 patient records required to be pulled | | | | | | | |
| FY17 - 47 patients 47 * 20% = 10 patient records required to be pulled | | | | | | | |
| FY18 - 22 patients 22 * 20% = 4 patient records required to be pulled | | | | | | | |
| | | | | | | | |
| FY11 - FY14 = 448 Patients.  448 * 20% = 89 patient records required to be pulled | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| FY11 - 97 patients 97 * 20% = 20 patient records required to be pulled | | | | | | | |
| FY12 - 75 patients 75 * 20% = 15 patient records required to be pulled | | | | | | | |
| FY13 - 73 patients 73 * 20% = 14 patient records required to be pulled | | | | | | | |
| FY14 - 202 patients 202 * 20% = 40 patient records required to be pulled | | | | | | | |

2.      Patient data for the years 2015-2018 are electronically stored and are easier to obtain.  Patient data covering 2011-2014 is stored in paper form only located in various warehouses and will be more burdensome and costly to produce.

3.      Regarding production for all of these veterans' medical files (*i.e.,* not just files related to treatment in the cath lab), the VA informed Schroeder that some files can be up to 40

4

years of treatment.  Based on this fact, Plaintiff requested that the VA only produce medical records going back five years prior to the veterans' treatment in the cath lab for this 132 sampling.  This sample size and parameters was confirmed on July 17, 2023.

4.      On August 8, 2023, the VA informed Schroeder that the cost for the above sample production would be $35,096.28.

5.      On August 11, 2023, Schroeder sent payment to the VA via Federal Express in the amount of $35,096.28 payable to the U.S. Department of Treasury.

6.      The VA's production of records began with patients treated in the 2015 to 2018 time frame—*e.g.,* the comparatively easier time frame for production due to the cath lab records being electronically stored.  Its first production of records occurred on October 13, 2023 for nineteen (19) veterans treated within this time frame.  These files did not contain any of the patients' imaging/x-rays.  The VA agreed to produce these for the 19 and for all future files.  Of the 19 produced, Schroeder returned one file because the patient did not receive any interventional treatment in Dole VA's cath lab.  The VA agreed to replace that patient sample.

7.      On October 27, 2023, the Plaintiff informed the VA that he would like to limit his sampling to cover 2014-2018 instead of going back to 2011.  This was a strategic decision made by Schroeder based on (a) the anticipated slow progress of record production from VA when it comes to the 2011-2014 paper records,[2] (b) deadlines in the related False Claims Act ("FCA") case and a desire to move forward, and, (c) the 2014-2018 time frame provided patient files by the four physicians who performed the procedures in the cath lab.

---

[2] The production of 32 records that were electronic took one month (these being easier to pull and access).  The majority of the remaining 100 records in the sample size in the warehouses was estimated to take another six months or more.

8. On October 27, 2023, the VA produced another eleven (11) patient files. Of these, Schroeder returned three (3) files because the patient did not receive any interventional treatment in Dole VA's cath lab. The VA agreed to replace these.

9. On November 2, 2023, in reviewing patient records, Schroeder noticed references to amputation and morbidity records. Schroeder had not received any such records to date. The VA's initial position was that said records are not "medical records." After emails/conversation with the VA, it agreed to supplement the files produced already with these records and to provide them in future productions.

10. On November 9, 2023, the VA produced another eleven (11) patient files. Of these, Schroeder returned five (5) files because the patient did not receive any interventional treatment in Dole VA's cath lab. The VA agreed to replace these. At this point in time, Schroeder had returned 9 files and retained 32. All of these sampled patients were still part of the 2015-2018 electronic data at Dole VA.

11. On November 14, 2023, Schroeder informed the VA to further limit the sample size production to cover the years 2015-2018. The cath lab records for this time frame were all electronically stored facilitating quicker production. Also, this timeframe still comported with Schroeder's reasoning set forth in paragraph 7, *supra*. Per the table provided by the VA (*see* ¶ 1, *supra*), a 20% sampling from each of these years led to a sample size of 43. As previously stated, Schroeder was in the possession of 32 sampled files at this point in time. Also, Schroeder informed counsel in his FCA matter that his claim for medically unnecessary treatment at Dole VA in the underlying FCA matter would now only cover 2015-2018.

12. On or about November 17, 2023, Plaintiff noticed that one of medical record files produced did not include all of that patient's cath lab procedures. It provided full records for one

6

procedure but referenced another procedure occurring the following day.  There were no records for the following day's procedure.  The second procedure led to an emergent transfer to another Wichita hospital where the veteran died a day later.  Schroeder's counsel reached out to the VA regarding this issue of missing records.

13.    After more communications on this issue, on November 27, 2023, Plaintiff was informed by the VA that the records for this patient—and all the other records produced to date—comported with what it believed was the agreed upon production.  The VA's position was that the VA would (a) randomly pull 20% of the veterans treated in each of the years between 2015-2018, (b) produce the cath lab procedure records *for that one year only*, and (c) produce five years of medical records before that date.  This is not what Plaintiff agreed to.  This makes no sense.  Schroeder's entire *Touhy* request was based on getting *all cath lab records* for an agreed upon sampling.

14.    In turn, Plaintiff requested that the VA go back for the 32 files already produced and verify that all cath lab records were produced.  If not, they should be produced.  Regarding the remaining 11 files to be produced, Plaintiff requested that these also include all cath lab records.

15.    On or about December 1, 2023, the VA produced nine (9) new files to replace the nine that were sent back (*see*, ¶¶ 6, 8, 10 *supra*).  Again, of these nine replacements, Plaintiff had to send back six (6) because these veterans did not have any interventional procedures in the Dole VA cath lab.  That left Plaintiff with 35 files that are possibly still incomplete since several veterans have more than one cath lab procedure over a number of years.

16.    Not to belabor this point, an exhausting number of emails were written between the VA and Schroeder's counsel on this issue.  Plaintiff repeatedly pointed out that the five-year

discussion arose in the context how far back we wanted records before the sample veteran was first seen in the cath lab.[3]  Receiving all of the veteran's cath lab records was never an issue—indeed it was the basis for the *Touhy* request in the first place.  The VA claimed that Schroeder requested cath lab records for only the year the veteran was pulled as part of the 20% sampling, and then five years before that one procedure.  This is nonsensical.  Schroeder clearly needs all of the subsequent cath lab procedure records for the patient sampling. The VA refused to change its position.  Knowing that some form of enforcement may be necessary in this APA matter, Schroeder's counsel contacted the VA's DOJ counsel in this APA matter: Jon Fleenor and Chris Allman.

17.     After several emails and one conversation, on January 3, 2024, Plaintiff emailed the VA's DOJ counsel Fleenor and Allman with a final proposal to resolve this dispute.[4]

18.     On January 9, 2024, Schroeder's counsel again spoke with the DOJ counsel about this issue and his proposal to resolve the matter in the most efficient way.  Counsel stated he needed to take some action if the VA was not going to change its mind.  Schroeder gave them until January 10, 2024 to provide a final response.  The response provided was the VA was standing by its position.

19.     <u>Where we stand regarding file production</u>:  As of this filing, Plaintiff has 35 files. Per the issue at hand, Plaintiff knows that several of these files do not contain all the veterans cath lab records.  The VA has informed Plaintiff that on January 19, 2024, it will produce the remaining eight (8) files.  However, due to the VA's continued position, these files again may not contain all the veterans' cath lab records.

---

[3] From Schroeder counsel's email: " . . . we really only need medical records going back 5 years from the first time the patient was treated in the cath lab."
[4] VA's Counsel designated all of these communications as confidential under F.R.E. 408.

20.     In addition, there is one other medical record/internal investigation document that the VA has not produced that was part of Plaintiff's *Touhy* request and this Court's order—"Documents Relating to Investigation," *see Schroeder*, 2023 WL 3478052, *12-13. As part of the initial VA production of these documents per the parties' agreement, two Excel spreadsheet tables were provided. The first table reflects the summaries/findings from an internal Dole VA review of 215 cath lab patients seen between 2015-2018. This review was done by nurses who flagged 56 veteran files for possible standard of care issues. As part of the same internal review, the second Excel table reflects summaries/findings reached by VA reviewing physicians regarding these 56 files. However, the names of all of the patients on these tables were redacted.

21.     On a number of occasions, Plaintiff requested that the VA identify the 43 veterans who compose the sample on these two Excel spreadsheets. First, these are part of these veterans' medical files. Second, these are part of the Dole VA's internal investigation of the cath lab. Third, the VA would only be identifying the names of the 43 persons whose medical records will be provided to the parties; therefore, there are no privacy issues. The identification of these persons is subject to production under the Court's order. Their identification is part of the *Touhy* documents/data at issue here. In response to Plaintiff's requests, the VA refused to identify these persons taking the position that another *Touhy* request would have to be made for this identification. Again, this was also discussed with the VA's DOJ counsel for resolution. However, their client is not changing its position.

### III.    <u>Argument</u>

"District courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases. Stated another way, a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing

before it." *Cincinnati Ins. Co. v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 20-CV-1367-HLT-TJJ, 2022 WL 1316446, at *2 (D. Kan. May 3, 2022) (citations omitted).  Moreover, "[t]here can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.  Our Circuit says a district court may exercise broad discretion in using its contempt power to assure compliance with its orders."  *SRA Ins. Agency, LLC v. Virtus LLC*, No. 21-2181-DDC-JPO, 2021 WL 1840065, at *2 (D. Kan. May 7, 2021) (Crabtree) (citations omitted).

Plaintiff is asking this Court to enforce the existing Judgment and related Court order. The VA has not complied with its agreement regarding production of medical records for a 20% sampling and has not fully disclosed "documents relating to investigation" of its cath lab.  There is no order, *per se*, that Plaintiff can move to enforce for the specific outstanding items discussed herein.  Possibly, this Court's June 30, 2023 order, stating "that the records sought by plaintiff and intervenor plaintiff are relevant to the claims and defenses in the [Schroeder] *qui tam* action" applies.  (Doc. 69)  However, Plaintiff believes the correct action is moving to enforce the Judgment and related Order.

After the Court issued its May 16, 2023 Order, and the clerk entered Judgment, the VA and Plaintiff agreed on a *Touhy* production, so the VA did not have to undertake further "consideration" or file a "supplemental response" within 30 days.  The VA's "further consideration" was an agreement reached with Plaintiff for document production.  However, this agreement has not been fulfilled.  Therefore, Plaintiff seeks his only recourse: moving this Court to issue an order enforcing the Judgment by requiring Defendant VA to: (a) reconsider its position on refusing production of the documents/data at issue herein, or (b) with thirty (30) days

10

of its Order on this Motion, require the VA to file supplemental briefing as to why it should not produce the documents/data at issue.

The VA first needs to account for why it won't go back and ensure that all cath lab records for the 43 sampled veterans include all cath lab records. Second, it needs to explain why disclosure of the 43 sampled names on the Excel spreadsheets does not constitute their medical records or "documents relating to investigation" of the Dole VA cath lab.

Finally, Plaintiff paid the Dole VA $35,096.28. This payment, per its request, covered the time and expense of pulling medical records for 132 veterans from 2011-2018. Due to Plaintiff's further limitations set forth herein, this production now only covers 43 veterans from 2015 through 2018. Keep in mind, all the missing cath lab records for this sampling are electronic and do not require visits to warehouses. At the very least, the documents being produced are roughly one-third of the initial scope. Also, what has been produced is not complete. Therefore, the VA should reimburse all or part of what Plaintiff has paid.

WHEREFORE, the Plaintiff respectfully requests that this Court issue an Order to enforce its May 16, 2023 Order and related Judgment as follows:

First, issue a Memorandum and Order finding that the documents and name identification requested herein were covered by Plaintiff's initial *Touhy* request and subject to this Court's May 16, 2023 Order and related Judgment;

Second, order the Defendant VA to reconsider its position regarding production of these records/names addressed herein or file a supplemental briefing within thirty (30) days of the Court's order on this issue as to why they are not covered by Plaintiff's *Touhy* request and this Court's May 16, 2023 Order; and

Third, within fourteen (14) days of its Order on this Motion, order the Defendant VA to refund to Plaintiff Schroeder either all of the $35,096.28 or whatever portion of this amount that the Court deems just and equitable.

Respectfully submitted,



Carrie Mulholland Brous KS #18157
**Brous Law LLC**
3965 West 83rd Street, Ste. #115
Prairie Village, KS  66208
(913) 209-8596
cbrous@brouslaw.com

*/s/ Brendan J. Donelon*
Brendan J. Donelon, KS #17420
4600 Madison, Suite 810
Kansas City, Missouri 64112
Tel:    (816) 221-7100
Fax:    (816) 709-1044
brendan@donelonpc.com

Daniel W. Craig, D.Kan. #78146
6642 Clayton Rd., #320
St. Louis, Missouri 63117
Tel:    (314) 297-8385
Fax:    (816) 709-1044
dan@donelonpc.com

Attorneys for Plaintiff

## Certificate of Service

The Plaintiff hereby certifies that on January 13, 2024 a true and correct copy of the foregoing was sent via email under this Court's CM/ECF policies to all attorneys of record.

*/s/ Brendan J. Donelon*
Brendan J. Donelon
Attorney for Plaintiff